

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action No. 3:22-cr-035 |
| ) | |
| v.   ) | Wire Fraud |
| ) | 18 U.S.C. § 1343 |
| KORTNEY THOMAS KELLEY ) | (Counts 1-3) |
| ) | |
| ) | Engaging in Monetary Transactions in |
| ) | Criminally Derived Property |
| Defendant.   ) | 18 U.S.C. § 1957 |
| ) | (Counts 4, 5) |
| ) | |
| ) | Forfeiture Allegation |

## INDICTMENT

April 2022 Term - At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

#### Defendant and Claimed Business Entities

1. The defendant, KORTNEY THOMAS KELLEY, resided in Richmond, Virginia, within the Eastern District of Virginia.

2. Focused Resources LLC ("Focused Resources") is a Virginia Limited Liability Company that KELLEY formed on or about October 17, 2018. At all times relevant to this Indictment, Focused Resources had no legitimate business activity and was not a going business concern. KELLEY was the sole owner of Focused Resources.

3. IntelliNest Solutions LLC ("IntelliNest") is a Virginia Limited Liability Company that KELLEY formed on or about January 29, 2019. At all times relevant to this Indictment,

1

IntelliNest had no legitimate business activity and was not a going business concern. KELLEY was the sole owner of IntelliNest.

4. Neither Focused Resources nor IntelliNest had any employees.

### The Small Business Administration

5. The United States Small Business Administration ("SBA") is an Executive Branch agency of the United States Government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disaster.

6. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### The Paycheck Protection Program

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic consequences of the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of other programs to address the COVID-19 pandemic.

8. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other business expenses, through a program referred to as the Paycheck Protection Program ("PPP").

9. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business, to a financial institution. The PPP loan applicant was required to acknowledge the Program rules and to make certain

affirmative certifications in order to be eligible to obtain the PPP loan. The PPP loan application required the applicant to state, among other things, the: (a) business's average monthly payroll expenses, and (b) the number of employees employed by the business. These figures were used to determine whether the business was eligible for a PPP loan and if so, the amount of funds the business could receive under the Program. Businesses applying for a PPP loan were also required to provide documentation of their business's payroll expenses.

10. A PPP loan application had to be processed by a participating financial institution (the lender). If the PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Lenders required that the information in the PPP loan applications be truthful, including the applicant's representations regarding the applicant's employees and payroll expenses. Such representations were material to the lender's decisions on both PPP loan approval and the loan funding amount.

11. The lender transmitted data from the application, including information about the borrower, the total amount of the loan, and the listed number of the business's employees, to the SBA in the course of processing the loan.

12. PPP loan proceeds could only be used by the applicant business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.

13. While this "first draw" PPP program ended on May 31, 2021, certain borrowers were eligible to apply for "second draw" PPP loans. Eligible borrowers included businesses with no more than 300 employees; which had previously received a PPP loan and used the full amount of "first draw" PPP loan money only for authorized expenses; and which could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and

2020. "Second draw" PPP loans were approved with the same general loan terms as the "first draw" PPP loans.

### Defendant's PPP "First Draw" Applications

14.     On or about April 8, 2020, KELLEY applied for a "first draw" PPP loan through Bank of America, a financial institution as that term is defined in Title 18 of United States Code, Section 20, for KELLEY's purported business Focused Resources.  KELLEY requested $36,000 in loan proceeds (SBA loan number ending in 7709), stating that the loan would be used for payroll expenses.  On this loan application, KELLEY further represented that Focused Resources had three (3) employees and an average monthly payroll of about $12,000. Thereafter, KELLEY filed an addendum stating that his average monthly payroll expenses were $45,824, necessitating a $114,560 loan amount under the PPP loan rubric.  On or about May 2, 2020, KELLEY further signed a Promissory Note for the PPP loan, "certif[ying] to [the] Bank that [KELLEY] has not provided false or misleading information or statements to the Bank in its application for the Loan."  As a result, on or about May 4, 2020, Bank of America approved the defendant's loan application and provided the defendant with $114,560 in "first draw" PPP loan funds, depositing those loan proceeds into the Bank of America checking account of Focused Resources (account number ending in 6246).

15.     On or about June 7, 2020, KELLEY applied for a "first draw" PPP loan through Bank of America for his purported business IntelliNest.  KELLEY requested $457,082 in loan proceeds (SBA loan number ending in 7803), stating that the loan proceeds would be used for payroll, lease and mortgage-related expenses, and utilities.  On his loan application, KELLEY further represented that IntelliNest had twenty-one (21) employees with an average monthly payroll of $172,000.  On or about June 11, 2020, KELLEY further signed a Promissory Note

for the PPP loan, "certif[ying] to [the] Bank that [KELLEY] has not provided false or misleading information or statements to the Bank in its application for the Loan." As a result, on or about June 11, 2020, Bank of America approved the loan application and provided the defendant with $457,082 in "first draw" PPP loan funds, depositing those loan proceeds into the Bank of America checking account of IntelliNest (account number ending in 1795).

16. As part of these "first draw" PPP applications for both Focused Resources and IntelliNest, KELLEY made numerous knowingly false representations that the purposes of the loans were "only for business-related purposes as specified in the loan application . . ." KELLEY also signed numerous certifications, falsely stating that the information submitted as part of the "first draw" PPP loan applications was true and correct, including a "certif[ication] that the information in all supporting documents and forms is true and accurate in all material respects. . ." As a further example of such a false representation, KELLEY indicated "No" to certifications asking: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" KELLEY's negative response was false because, as KELLEY well knew, he was the registered owner of both Focused Resources and IntelliNest.

17. In signing the Promissory Notes for the "first draw" PPP loans, KELLEY represented that he would use all loan proceeds only for business-related purposes. Notably, KELLEY also signed acknowledgements that if "the funds are knowingly used for unauthorized purposes, the federal government may hold [KELLEY] legally liable, such as charges of fraud."

18. As part of his PPP applications, KELLEY also submitted knowingly false supporting documentation to bolster his applications, including Internal Revenue Service Forms 940 and 941, that purported to show that KELLEY's companies paid hundreds of thousands of

dollars to their (purported) employees each year. KELLEY also provided the financial institution reviewing his PPP loan application with fabricated financial statements that falsely reflected payroll and other expenses for businesses that in truth and fact had neither.

19.     Each time that KELLEY submitted a "first draw" PPP application, he necessarily caused a wiring from Bank of America servers located in Texas to SBA servers located in Sterling, Virginia, within the Eastern District of Virginia.

### Defendant's PPP "Second Draw" Applications

20.     On or about January 23, 2021, KELLEY applied for a "second draw" PPP loan through Bank of America for his purported business Focused Resources. KELLEY filed an application seeking approximately $114,500 in loan proceeds (SBA loan number ending in 8301), stating that the loan proceeds would be used for payroll, rent and mortgage interest, and utilities. On this loan application, KELLEY further represented that Focused Resources had sixty-two (62) employees and an average monthly payroll of approximately $45,824. As a result, on or about January 25, 2021, Bank of America approved KELLEY's loan application and provided the defendant with $114,500 in "second draw" PPP loan funds, depositing those loan proceeds into the Bank of America checking account of Focused Resources (account number ending in 6246).

21.     On or about January 26, 2021, KELLEY applied for a "second draw" PPP loan through Bank of America for his purported business IntelliNest. KELLEY requested approximately $457,000 in loan proceeds (SBA loan number ending in 8401), stating that the loan proceeds would be used for payroll, lease and mortgage-related expenses, utilities, and covered operations expenditures. On his loan application, KELLEY further represented that IntelliNest had eighty-one (81) employees and an average monthly payroll of approximately

6

$182,833. As a result, on or about February 12, 2021, Bank of America approved KELLEY's loan application provided the defendant with $457,082 in "second draw" PPP loan funds, depositing the loan proceeds into the Bank of America checking account of IntelliNest (account number ending in 1795).

22. The IntelliNest "second draw" PPP Promissory Note included a representation that "[a]ll proceeds of the Loan will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule and Borrower acknowledges that if the funds are knowingly used for unauthorized purposes, the federal government may hold Borrower and/or Borrower's authorized representative legally liable, such as for charges of fraud." The Focused Resources "second draw" PPP Promissory note included a similar representation that (1) "[t]he proceeds of the Loan will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under PPP Guidance"; and (2) "[n]ot more than 40% of loan proceeds may be used for non-payroll costs."

23. In submitting these "second draw" PPP applications for Focused Resources and IntelliNest, KELLEY signed Promissory Notes for each PPP loan, falsely certifying, among other things, that KELLEY "has not provided false or misleading information" to the Bank and the SBA in those loan applications.

24. Each time that KELLEY submitted a "second draw" PPP application, he caused a wiring from SBA servers located in California to SBA servers located in Sterling, Virginia, within the Eastern District of Virginia.

## Defendant's PPP Loan Forgiveness Applications

25. Starting as early as in or about September 2021, KELLEY applied for and received loan forgiveness for the "first draw" and "second draw" PPP loans on behalf of both Focused Resources and IntelliNest. KELLEY made knowingly false representations to the SBA in these loan forgiveness applications, to include KELLEY's claim that his businesses spent various amounts on payroll costs.

26. In truth and in fact, KELLEY spent none of these PPP monies on payroll costs because he had no employees at either IntelliNest or Focused Resources. Based on his false certifications and representations to the SBA, KELLEY obtained a total discharge of his PPP loans in the amount of approximately $914,164 for IntelliNest and $229,060 for Focused Resources.

## Scheme and Artifice to Defraud

27. The factual allegations contained in the preceding paragraphs are incorporated herein as if set forth in full.

28. From on or about at least April 8, 2020, to at least on or about August 31, 2021, in the Eastern District of Virginia and elsewhere, KORTNEY THOMAS KELLEY, the defendant herein, devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

29. It was a part of the scheme and artifice that the defendant sought to fraudulently obtain disaster-related benefits in the form of SBA PPP loans.

30. It was further a part of the scheme and artifice that the defendant submitted applications for PPP loans that contained knowingly and deliberately false statements,

misrepresentations, and omissions related to the defendant's claimed business entities, number of employees, and business costs associated with such business entities.

31. It was further a part of the scheme and artifice that the defendant falsely attested on the aforementioned PPP loan applications that the information presented was true and accurate, despite knowingly including false information about his businesses' (non-existent) payroll expenses to employees.

32. It was further a part of the scheme and artifice that the defendant received and obtained at least $1,143,224 in PPP loan proceeds in the name of his claimed business entities Focused Resources and IntelliNest.

33. It was further part of the scheme and artifice that the defendant made further misrepresentations about his business entities and his use of the PPP loan proceeds in order to obtain loan forgiveness of at least $1,143,224 in PPP loan proceeds.

34. It was further a part of the scheme and artifice that the defendant expended the PPP loan proceeds on purposes unrelated to those authorized by the SBA, including (1) spending at least $142,711 in loan proceeds at various casinos and on gaming; (2) withdrawing at least $42,221 in loan proceeds in cash withdrawals; and (3) transferring at least $834,077 in loan proceeds to KELLEY's personal brokerage accounts.

35. Specifically, KELLEY transferred funds into his personally owned cash management account at Merrill Lynch (account number ending -0168) as well as his personally owned margin account at Robinhood (account number ending -2322). Both Merrill Lynch and Robinhood are financial institution as that term is defined in Title 18 of United States Code, Section 20.

36. It was further a part of the scheme and artifice that the defendant caused the transmission of information and funds by wire between locations within the Eastern District of Virginia and locations outside of the Commonwealth of Virginia.

## COUNTS ONE THROUGH THREE
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

37. Paragraphs 1 through 36, including all subparagraphs, of this Indictment are realleged and incorporated as if set forth in full here.

38. On or about the date set forth below, in the Eastern District of Virginia and elsewhere, for the purposes of executing the above-described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, defendant KORTNEY THOMAS KELLEY knowingly caused to be transmitted by means of wire communication in interstate commerce, the writings, signs, signals, pictures, and sounds described below:

| Count | On or About Date | Description of Wire Transmission |
|---|---|---|
| 1 | June 7, 2020 | KELLEY submitted an SBA PPP loan application (last four digits 7803) through Bank of America for IntelliNest that contained false statements and misrepresentations and omissions related to his business entity, employees, income, and payroll expenses. KELLEY'S submittal of this application caused an electronic transmission of the PPP loan application from Bank of America servers located in Texas to SBA servers in Sterling, Virginia, within the Eastern District of Virginia. |
| 2 | January 23, 2021 | KELLEY submitted an SBA PPP loan application (last four digits 8301) through Bank of America for Focused Resources that contained false statements and misrepresentations and omissions related to his business entity, employees, income, and payroll expenses. KELLEY'S submittal of this application caused an electronic transmission of the PPP loan application from SBA servers located in California to SBA servers in Sterling, Virginia, within the Eastern District of Virginia. |
| 3 | January 26, 2021 | KELLEY submitted an SBA PPP loan application (last four digits 8401) through Bank of America for IntelliNest that contained false statements and misrepresentations and omissions related to his business entity, employees, income, and payroll expenses. KELLEY'S submittal of this application caused an electronic transmission of the PPP loan application from SBA servers located in California to SBA servers in Sterling, Virginia, within the Eastern District of Virginia. |

(All in violation of Title 18, United States Code, Section 1343.)

## COUNTS FOUR AND FIVE
(Engaging in Monetary Transactions in Criminally Derived Property)

THE GRAND JURY FURTHER CHARGES THAT:

39. Paragraphs 1 through 38, including all subparagraphs, of this Indictment are realleged and incorporated by reference as if fully set forth here.

40. On or about the following dates and in the manner described below, in the Eastern District of Virginia and elsewhere, defendant KORTNEY THOMAS KELLEY did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value

11

greater than $10,000, that is, money deposits representing fraudulently obtained disaster-related loan proceeds, such property having been derived from a specified unlawful activity, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343.

| Count | On or About Date | Monetary Transaction |
|---|---|---|
| 4 | August 4, 2020 | KELLEY conducted a $200,000 electronic cash transfer from the Bank of America account of IntelliNest (account number ending -1795) to a cash management account at Merrill Lynch (account number ending -0168) belonging to KELLEY. |
| 5 | August 13, 2020 | KELLEY conducted a $50,000 electronic cash transfer from the Bank of America account of IntelliNest (account number ending -1795) to a margin account at Robinhood (account number ending -2322) belonging to KELLEY. |

(In violation of Title 18, United States Code, Section 1957.)

### FORFEITURE ALLEGATION

Pursuant to 32.2 of the Federal Rules of Criminal Procedure, the defendant is hereby notified that upon conviction of any of the offenses charged in Counts One through Four of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from any proceeds traceable to the offense.

The defendant is further notified that upon conviction of any of the offenses charged in Counts Five through Seven of this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to the offense. Property subject to forfeiture includes, but is not limited to:

> A sum of money of at least $1,143,224, which represents the amount of proceeds the defendant obtained from the offenses of conviction, which sum shall be reduced to a money judgment against the defendant in favor of the United States.

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461 and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

By: _____
Avishek Panth
Assistant United States Attorney