IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KORTNEY THOMAS KELLEY,<br><br>*Defendant.* | Case No. 3:22-cr-35 |

## STATEMENT OF FACTS

The United States and the defendant, KORTNEY THOMAS KELLEY (hereinafter, "the defendant"), stipulate that the allegations contained in Count 3 of the Indictment and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt.

### Defendant and his Businesses

1. From on or about April 8, 2020, and continuing through on or about August 31, 2021, the defendant, KORTNEY THOMAS KELLEY, resided in Richmond, Virginia, within the Eastern District of Virginia.

2. Focused Resources LLC ("Focused Resources") was a Virginia Limited Liability Company that the defendant formed on or about October 17, 2018. Thereafter, Focused Resources had no monthly payroll expenses and was not a going business concern. The defendant was the sole owner of Focused Resources.

3. IntelliNest Solutions LLC ("IntelliNest") was a Virginia Limited Liability Company that the defendant formed on or about January 29, 2019. Thereafter, IntelliNest had no

1

monthly payroll expenses and was not a going business concern. The defendant was the sole owner of IntelliNest.

### Small Business Administration

4. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by empowering small businesses and by assisting in the economic recovery of communities after disaster.

5. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### The Paycheck Protection Program

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans suffering from the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 pandemic.

7. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP").

8. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible

2

to obtain the PPP loan. In the PPP loan application, the applicant had to state, among other things, the business's: (a) average monthly payroll expenses; and (b) number of employees. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

9. A PPP loan application had to be processed by a participating financial institution (the lender). If the PPP loan application was approved, the lender funded the PPP loan using its own monies, and such loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds could only be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The proceeds of a PPP loan could only be spent on specific expenses authorized by the SBA.

11. While this first draw PPP program ended on May 31, 2021, certain borrowers were eligible to apply for second draw PPP loans. Eligible borrowers included businesses that: had no more than 300 employees; which had previously received a PPP loan and would or had already used the full amount only for authorized uses; and which could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. Second draw PPP loans were approved with the same general loan terms as the first draw PPP loans.

## The Scheme and Artifice to Defraud

12. From on or about April 8, 2020, and continuing through on or about August 31, 2021, in the Eastern District of Virginia and within the jurisdiction of this Court, KORTNEY THOMAS KELLEY, the defendant herein, did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud and to obtain property by means

of materially false and fraudulent pretenses and promises through the transmission of signs, signals, and writings in interstate commerce.

*Purpose of the Scheme and Artifice to Defraud*

13. The purpose of the scheme was for the defendant to unlawfully enrich himself by: 1) obtaining disaster-related benefits in the form of PPP loan proceeds under false and misleading pretenses; 2) submitting false statements, false certifications, and forged documentation in connection with four separate PPP loan applications to FINANCIAL INSTITUTION 1 and the SBA, for the purpose of obtaining PPP loans; 3) submitting false statements and false certifications in connection with four separate PPP loan forgiveness applications to FINANCIAL INSTITUTION 1 and the SBA, for the purpose of obtaining complete discharge of the defendant's PPP loan obligations; and 4) expending fraudulently-obtained PPP loan proceeds on expenses unrelated to those authorized by the SBA.

*Execution of the Scheme and Artifice to Defraud*

14. In total, the defendant submitted four false and misleading PPP loan applications to FINANCIAL INSTITUTION 1 for businesses that the defendant owned, to wit: first draw and second draw PPP applications on behalf of both Focused Resources and IntelliNest. On these PPP loan applications, the defendant made knowingly false statements and knowingly false certifications to mislead FINANCIAL INSTITUTION 1 and the SBA, including:

   a. Providing false and fabricated Internal Revenue Service tax return documentation purporting to show legitimate business activity at Focused Resources and IntelliNest;

4

      b. Falsely certifying that Focused Resources and IntelliNest had over 140 workers and paid out over $220,000 in monthly payroll expenses; and

      c. Falsely certifying that the loan proceeds would be and were used exclusively for eligible business expenses.

15. For instance, on or about January 26, 2021, the defendant submitted a second draw PPP loan application (last four digits 8401) through FINANCIAL INSTITUTION 1 for IntelliNest containing false statements, misrepresentations, and omissions related to the defendant's business entity, employees, income, and payroll expenses. As a result, FINANCIAL INSTITUTION 1 deposited $457,082 in the IntelliNest bank account at FINANCIAL INSITTITION 1 on or about February 12, 2021.

16. In total, the defendant improperly obtained $1,143,224 via four PPP loans from FINANCIAL INSTITUTION 1.

17. Furthermore, the defendant submitted a separate loan forgiveness application in connection with each of these four PPP loan applications, resulting in the SBA completely discharging the defendant's PPP loan obligations. On these PPP loan forgiveness applications, the defendant made knowingly false statements and knowingly false certifications to mislead the SBA, including, but not limited to:

      a. Falsely certifying that the loan proceeds were used exclusively for eligible business expenses; and

      b. Providing false and fabricated documentation from HUMAN RESOURCE VENDOR 1 as supporting justification, purporting to substantiate claimed payroll expenses.

18. The defendant expended the PPP loan proceeds on purposes unrelated to those authorized by the SBA, including (1) spending at least $142,711 in loan proceeds at various casinos and on gaming; and (2) transferring at least $834,077 in loan proceeds to KELLEY's personal brokerage accounts. As an illustrative example, on or about February 22, 2021, ten days after receiving second draw PPP loan funds for IntelliNest, the defendant spent $9,352 in PPP loan funds at the Mardi Gras Casino in Cross Lanes, West Virginia. Then, on March 2, 2021, the defendant transferred $254,377 in second draw PPP loan funds for IntelliNest to his personal brokerage account in FINANCIAL INSTITUTION 2.

19. For the purpose of executing the aforesaid scheme and artifice to defraud, the defendant routinely caused wire transmissions in interstate commerce, including wire transmissions of PPP loan applications from FINANCIAL INSITITUTION 1 servers and SBA servers located outside of the Commonwealth of Virginia to SBA servers within the Eastern District of Virginia.

20. For example, on or about January 26, 2021, for the purpose of executing and attempting to execute the scheme and artifice described above, the defendant caused to be transmitted by means of wire communication in interstate commerce the signs, signals, and writings described herein: the defendant's electronic submittal of the IntelliNest second draw PPP application, which caused an electronic transmission of that application from SBA servers located in California to SBA servers located in Sterling, Virginia, within the Eastern District of Virginia.

21. It was further part of the scheme and artifice to defraud for the defendant to submit to the Virginia Employment Commission, as part of separate claims for unemployment insurance throughout 2020 and 2021, false certifications and false representations: 1) that the defendant was

laid off from his job as a sales manager at Focused Resources, a business the defendant solely owned, in or about March 28, 2020; and 2) that the defendant did not apply for or receive any PPP funds.

22. It was further part of the scheme and artifice to defraud for the defendant to submit to the SBA a false and misleading application under a separate CARES Act program – the Economic Injury Disaster Loan ("EIDL") program – on behalf of IntelliNest. Such an application contained a false certification that the loan proceeds would be used exclusively for eligible business expenses. In response to one of the false and misleading applications the defendant submitted, the SBA disbursed a $10,000 advance to the IntelliNest bank account designated by the defendant. Ultimately, these funds were not spent on eligible expenses under the EIDL program.

23. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

24. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Avi Panth
Assistant United States Attorney

I have consulted with my attorney regarding this Statement of Facts. I knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt.

1/11/2023
Date

KORTNEY THOMAS KELLEY
Defendant

I am counsel for defendant, KORTNEY THOMAS KELLEY. I have carefully reviewed this Statement of Facts with him and, to my knowledge, his decision to agree to this Statement of Facts is an informed and voluntary decision.

1/11/23
Date

Emily Munn
Counsel